# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD J. RENNELL, JR. and R.E. FUND MANAGEMENT GROUP, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09 C 2193 |
| RANDALL K. ROWE, GREEN COURTE R.E. FUND, LLC, GREEN COURTE REAL ESTATE PARTNERS, LLC, GREEN COURTE PARTNERS, LLC, STEPHEN C. WHEELER, JAMES R. GOLDMAN, and JOHN DOES 1-10, | ) ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Rennell's company, R.E. Fund Management Group, LLC, entered into a joint venture with Defendant Randall Rowe's company, Green Courte Real Estate Partners, LLC in 2004. The joint venture, Green Courte R.E. Fund, LLC, was formed for the purpose of owning and managing manufactured housing communities. After three years, Rowe informed Rennell that he was terminating the agreement and that Rennell's company would lose its ownership interest in the joint venture. Rowe gave Rennell the choice to either accept the termination and get a fraction of what he was owed or reject it and get nothing. Rennell accepted and signed an agreement promising not to sue. Rennell and his company have nevertheless brought this suit against Rowe, Rowe's company, and several other Defendants involved in the joint venture, alleging two claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and nine state law claims. Defendants move to dismiss the complaint, and, for the reasons that follow, their motion is granted.

## FACTUAL BACKGROUND

Plaintiff Rennell is the managing member of R.E. Fund Management Group. (Compl. ¶¶ 1-

2.) Defendants Rowe, Stephen Wheeler, and James Goldman control Defendants Green Courte Real Estate Partners and Green Courte Partners, LLC. (*Id.* ¶¶ 7-10.) Both Green Courte entities have the same address; Green Courte Partners is apparently an owner of Green Courte Real Estate Partners. (*Id.* ¶¶ 4-5.) In 2004, Green Courte Partners and R.E. Fund formed a joint venture to acquire, own, and manage manufactured housing communities.[1] (*Id.* ¶¶ 16, 18-19.) As explained in more detail in the complaint, for each community, Green Courte Partners supplied most or all of the necessary equity while R.E. Fund supplied the rest and was responsible for operations and management. (*Id.* ¶¶ 16, 28-29, 31, 37, 41-43.) Under agreements made as part of the joint venture, R.E. Fund was to be paid management fees for each community of 3 or 4% of the gross revenues. (*Id.* ¶¶ 21, 28, 31, 37, 42-43.) The joint venture owned and operated communities in New York, Michigan, Pennsylvania, Wisconsin, and Minnesota. (*Id.* ¶¶ 19, 26, 29, 33, 39.) And their operations were successful, generating profits and earning "excellent reviews" from Defendants. (*Id.* ¶¶ 54-56.)

In 2006, Defendant Wheeler joined Green Courte Partners as Managing Director, Asset Management. (Compl. ¶ 34.) Although Wheeler himself "had no previous experience in or knowledge of the manufactured housing industry," Wheeler announced that rather than continue the joint venture, "his goal was to bring all property management aspects" under the direct control of Green Courte Partners. (*Id.* ¶¶ 34-35.) Despite this statement of Wheeler's intentions, Plaintiffs

---

[1] A manufactured home is defined by the Department of Housing and Urban Development as

> a structure, transportable in one or more sections, which in the traveling mode is 8 body feet or more in width or 40 body feet or more in length or which when erected on-site is 320 or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air-conditioning, and electrical systems contained in the structure.

24 C.F.R. § 3280.2.

allege that they were blindsided when, in November 2007, Rowe told Rennell that he was terminating the Joint Venture Operating Agreement. (*Id.* ¶ 61.) The Agreement, a copy of which is attached to Defendants' memorandum of law,[2] permits Green Courte Real Estate to terminate R.E. Fund for cause, (Defs' Ex. 1 § 5.2(a)), but Plaintiffs allege that there was no cause for the termination. (Compl. ¶ 62.)

Following the termination, Rowe proposed that Rennell sign a release in which Rennell would accept the termination and promise not to sue Defendants in exchange for a payment. (*Id.* ¶ 64; Defs' Ex. 8, Attachment 1.) The amount that Rowe offered was a fraction of what Rennell was entitled to under the agreements: on a loan application in June 2007, Defendants had estimated the value of R.E. Fund's share at $3.5 million, but valued it at only $282,980 in November 2007. (Compl. ¶¶ 51, 71, 131; Defs' Ex. 8, at 1.) Rowe gave Rennell just 24 hours to decide whether he would sign the release and warned that if he did not sign, he would get nothing and Rowe would make the termination public, thereby harming Rennell's future business prospects. (Compl. ¶¶ 65-66.) Rowe's threats were, of course, threats; if Plaintiffs' allegations are true, the court presumes that Rennell could have refused to sign the release and sued for an accounting. *Cf. Ambuul v. Swanson*, 162 Ill. App.3d 1065, 516 N.E.2d 427 (1st Dist. 1987). Instead, Rennell eventually agreed to the terms of the release, and his share in the joint venture reverted to the Defendants. (Compl. ¶ 73.) Plaintiffs allege that Defendants used similar tactics to terminate two partners in other joint ventures without cause and with little compensation. (*Id.* ¶ 40, 47.)

Plaintiffs filed an eleven-count complaint naming as Defendants the joint venture, the two Green Courte companies, Rennell, Wheeler, Goldman, and ten John Does who Plaintiffs allege to

---

[2] When a complaint refers to provisions of a contract not attached to the complaint, the court may consider that document in ruling on a Rule 12(b)(6) motion. *Minch v. City of Chicago*, 486 F.3d 294, 300 n.3 (7th Cir. 2007) (*citing Tierney v. Vahle*, 304 F.3d 734, 738-39 (7th Cir. 2002)). Plaintiffs have not objected to consideration of the Operation Agreement; in fact, they have explained that the agreement was not attached to the complaint "because it is already in possession of Defendants." (Compl. ¶ 18.)

3

have engaged in similar conduct to the individual Defendants. (Compl. ¶¶ 3-11.) Counts One and Two are brought under RICO; the remaining claims are brought under state law. Defendants have moved to dismiss all claims.

## DISCUSSION

**A.     RICO Claims**

Claims One and Two are brought under 18 U.S.C. § 1964(c), which allows individual civil suits to remedy RICO violations. In Claim One, Plaintiffs allege that Defendants violated 18 U.S.C. § 1962(b):

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

And in Claim Two, Plaintiffs allege that Defendants violated § 1962(c):

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

Defendants argue that both claims must be dismissed because, among other defects, the Plaintiffs have not alleged any racketeering activity.

"Racketeering activity" is defined in 18 U.S.C. § 1961 to mean any act or threat involving one of several state or federal crimes. Plaintiffs have not specified which crime they believe was involved in Defendants' conduct, but their brief in opposition to Defendants' motion focuses on the federal crime of extortion, defined under the Hobbs Act, 18 U.S.C. § 1951, as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." (Pls' Br. at 5-7.) The fear at issue can be a fear of economic loss, but the use of that fear must be "wrongful." That is, "the statute applies only to situations where the extortionist has no legitimate claim to the property." *United States v. Lisinski*, 728 F.2d 887, 890 (7th Cir. 1984) (*citing United States v. Enmons*, 410 U.S. 396, 399-400 (1973)).

Applying this principle in *Enmons*, the Supreme Court explained that the "use of actual or threatened force, violence, or fear" is "wrongful" under the Hobbs Act where a union uses proscribed means to get "wage" payments for fictitious services, but not where a union used proscribed means to increase the wage payments to which workers are entitled as compensation for real services. *Enmons*, 410 U.S. at 400. *Lisinski* applied the principle in a case in which the defendant sought money from a restaurant owner in exchange for defendant's assistance in influencing the Illinois Liquor Control Commission to grant the restaurant a liquor license. The Seventh Circuit affirmed a conviction of extortion despite the absence of evidence that defendant had explicitly threatened the victim; the Seventh Circuit held that the wrongful use of fear to acquire property to which the extortionist had not legitimate claim was sufficient. *Lisinski*, 728 F.2d at 891-92. Defendant Lisinski had no legal authority to collect bribe money from the victim, nor any legitimate claim to a kickback for assisting the victim in obtaining the liquor license.

The complaint in this case fails to allege extortion under the Hobbs Act because it does not allege that Defendants lacked a legitimate claim to Plaintiffs' interest in the Joint Venture. Defendants' conduct was "wrongful," Plaintiffs argue, because Defendants offered less than fair market value for the interest and because, by so doing, Defendants violated their state law duties of good faith and fair dealing. (Pls' Br. at 7.) That argument fails because Plaintiffs have alleged only that Defendants had no right to the interest *at the price offered*; there is no allegation that Defendants had no right to Plaintiffs' interest at all. *Lisinski*, 728 F.2d 887; *accord Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 522-24 (3d Cir. 1998) (though the claim-of-right defense recognized in *Enmons* is unavailable in a case involving threatened or actual use of force or violence, "the use of economic fear in business negotiations between private parties is not 'inherently' wrongful"); *United States v. Sturm*, 870 F.2d 769, 772-73 (1st Cir. 1989) ("[F]or purposes of the Hobbs Act, the use of legitimate economic threats to obtain property is wrongful only if the defendant has no claim of right to that property.") In fact, under the terms of the contract,

5

Defendants *did* have a right to Plaintiffs' interest in the event of a termination:

> Upon any Termination Event (i) the Class C Member [R.E. Fund] shall cease to be a Member of the Company and be deemed to have withdrawn from the Company, effective as of the date of the occurrence of the Termination Event, and, upon such occurrence and from time to time thereafter, at the written request from the Managing Member [Green Courte Real Estate], the Class C Member [R.E. Fund] shall execute an assignment of its Membership Interest and such other documents as requested to evidence such withdrawal.

(Defs' Ex. 1, § 5.2(d)(1)). And the termination agreement that Rennell signed on behalf of R.E. Fund confirms that there was a Termination Event. (Defs' Ex. 8, at 1.) In effect, Plaintiffs have alleged only that Defendants offered them a bad deal. Beyond that, Plaintiffs have neither alleged nor argued that there was any "wrongful" threat or fear. Proposing a bad economic deal is not extortion, and, therefore, Plaintiffs have failed to allege any racketeering activity. Accordingly, Claims One and Two are dismissed without prejudice.

**B.     Remaining Claims**

The remaining nine claims are all brought under state law and the parties are not diverse in citizenship. Having dismissed the only federal claims, the court declines to exercise supplemental jurisdiction over Claims Three through Eleven and dismisses those Claims without prejudice. 28 U.S.C. § 1367(c)(3). *See Sharp Electronics Corp. V. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514-15 (7th Cir. 2009) (absent certain exceptions, when federal claims are dismissed before trial, the district court should relinquish jurisdiction over pending state law claims rather than resolve them on the merits).

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss the Complaint [28] is granted. Plaintiffs have leave to file an amended complaint within 21 days.

ENTER:

Dated: January 7, 2010

_____
REBECCA R. PALLMEYER
United States District Judge